## Cameron *v.* Great Atlantic & Pacific Tea Co., Inc., Appellant.

Argued March 20, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*J. Perry Eckels,* with him *Eckels, Blystone, Fuller & Kinnunen,* for appellant.

*Robert E. Wayman,* with him *George J. Barco,* and *Barco & Barco,* and *Wayman, Irvin, Trushel & McAuley,* for appellees.

Opinion by Mr. Justice Eagen, July 2, 1970:

This is an appeal from an order entered below "refusing" without evidentiary hearing a petition to strike or open a judgment.

The facts necessary to a decision are undisputed and may be summarized as follows:

On April 12, 1967, Laura M. Cameron was injured when a "pop" bottle manufactured by defendant Cott Corporation and distributed by Cott Bottling Company of Pittsburgh (for convenience these two defendants are hereinafter collectively referred to as Cott) exploded at the check-out counter of a supermarket of defendant The Great Atlantic & Pacific Tea Company (A. & P.) in Crawford County.[1] Mrs. Cameron lost an eye and suffered residual damage to the other eye as a result of the explosion and, thereafter, she and her husband sought damages from Cott and A. & P. in an action in assumpsit.

The firm of Wayman, Irvin, Trushel & McAuley entered an appearance on behalf of all defendants. However, in the course of its preparation of the case, the Wayman firm became aware of a potential conflict of interest between the A. & P. and Cott and it thereupon petitioned the court to withdraw its appearance on behalf of A. & P. Subsequently, the firm of Eckels, Blystone, Fuller & Kinnunen entered its appearance on behalf of A. & P. and petitioned the court to disqualify the Wayman firm from representing Cott, alleging a conflict of interest. This petition was denied by the court and the suit proceeded to trial on April 21, 1969. On the following day, after plaintiffs had completed their case except for medical testimony, all of the parties agreed to a settlement of the case, and prepared and signed the following Stipulation of Settlement:

---

[1] At the time, Mrs. Cameron was in the process of purchasing this bottle and two other bottles of "pop", together with other grocery items.

"And Now, this 22nd day of April, 1969, after the Plaintiff has completed their case, except for the medical aspects thereof, counsel have agreed upon a settlement and have asked that the same be reduced to stipulation, to be transcribed by the Court Reporter and signed by counsel for Cott and A. & P.

"It is stipulated and agreed that the case be settled with the Plaintiffs for the amount of fifty-five thousand ($55,000.00) dollars, and that if the defendants, the Great Atlantic and Pacific Tea Company, shall produce a copy of the certificate of the American Mutual Liability Insurance Company of Boston, Massachusetts, granting general comprehensive product liability coverage, affording coverage to the Great Atlantic and Pacific Tea Company, including the claim of James C. Cameron and Laura M. Cameron against the Great Atlantic and Pacific Tea Company, Cott Corporation and Cott Bottling Company of Pittsburgh, Pennsylvania, Incorporated, arising out of an accident occurring April 12, 1967, the American Mutual Liability Insurance Company, Boston, Massachusetts, on behalf of the two Cott Corporation defendants, the said American Mutual Liability Insurance Company of Boston, Massachusetts, will pay the entire amount of the settlement, including costs and disbursements.

"In the event the Great Atlantic and Pacific Tea Company is either unable to produce a valid certificate of insurance or that coverage is not afforded under said certificate of insurance, then the Cott Corporation defendants will pay one-half of the said settlement and the defendant, the Great Atlantic and Pacific Tea Company, will pay one-half of the settlement to the Plaintiffs.

"Essentially, what we are saying, if there is coverage afforded the Great Atlantic and Pacific Tea Company under the certificate of insurance, which the Great At-

lantic and Pacific Tea Company contends it has, then the responsibility for the total settlement is on Cott. If there is no coverage under the certificate or they do not have such a certificate, then the liability will be fifty (50%) percent Cotts and fifty (50%) percent the Great Atlantic and Pacific Tea Company.

"George J. Barco
     Attorney for Plaintiffs.
Robert E. Wayman
     Attorney for Defendant, Cott.
J. Perry Eckels
     Attorney for Defendant, A. & P."

When informed that a settlement had been reached, the court, after reviewing the terms that would be in the signed Stipulation, withdrew the jury and "marked the case settled." The only relevant docket entry reads: "Case *reported* settled." (Emphasis added.)

The settlement agreement was clear as to the amount of plaintiffs' recovery. However, it was not definite as to who would recompense the plaintiffs. Almost two months after the agreement had been reached, the defendants were still unable to satisfactorily resolve this question and the plaintiffs remained unpaid.

The plaintiffs thereupon filed a Motion for Entry of Judgment against all defendants in the amount of $55,000, in accord with the agreement of April 22, 1969. A Rule To Show Cause was granted. No answer to this petition was filed by any of the defendants and on the return day of the rule after an informal hearing in which both defendants argued their respective liability under the terms of the settlement agreement, the court entered judgment against all defendants in the amount stated in the agreement on July 8, 1969. A. & P. immediately petitioned the court to open or strike the judgment entered. The court granted a

Rule To Show Cause why the judgment should not be stricken off or opened. After further argument, A. & P.'s petition was "refused." A. & P. filed this appeal.[2]

We need presently only consider A. & P.'s petition to strike. A petition to strike off a judgment is the remedy sought by one who complains of fatal irregularities appearing on the face of the record. *Linett v. Linett*, 434 Pa. 441, 254 A. 2d 7 (1969); *Washington County Controller's Case*, 427 Pa. 631, 235 A. 2d 592 (1967); *Mountain City S. & L. Assn. v. Bell*, 413 Pa. 67, 197 A. 2d 608 (1963). A. & P.'s petition in this regard challenges the validity of the judgment entered by the court.

A. & P. argues that at the time of the entry of judgment, the court no longer had jurisdiction of the cause of action. We note, however, that none of the parties filed praecipes to settle, discontinue and end with prejudice. Neither did the court *order* that the action be so marked. Cf. *Murdoch v. Murdoch*, 418 Pa. 219, 210 A. 2d 490 (1965); *Baumgartner v. Whinney*, 156 Pa. Superior Ct. 167, 39 A. 2d 738 (1944). Rather the court, apparently aware of the contingency on which the payment of the settlement was based, merely marked the case settled. This was in and of itself only a ministerial act—a notation on the docket—and did not "terminate" the action. The tentative nature of the docket entry—"Case *reported* settled" (Emphasis added.)—gives further evidence of this fact. Thus, the suit was still pending and the court did not lose jurisdiction over the cause of action.

However, we are compelled to reverse for another reason. In *Melnick v. Binenstock*, 318 Pa. 533, 179 A. 77 (1935), it was stated: "Where the right of one of

---

[2] After the appeal was filed, Cott paid the entire amount of the judgment with interest and costs and took an assignment from the plaintiffs of one-half of the judgment.

the parties to such an agreement compromising pending litigation is contested, the *true interpretation of the agreement* should be found by the court in which the litigation was pending . . . ." (Emphasis added.) Thus it was appropriate under the circumstances for the court to entertain plaintiffs' petition and to order a hearing. Had this been done properly, the present appeal might have been made unnecessary. But the court completely misconstrued its task. Although it entered judgment against *all* defendants, the court expressly stated that "any question of the liability inter se of the Defendants . . . was not an issue in the above-entitled case, is not an issue properly justiciable by the court as a part of the above-entitled case nor will any such issue be determined or prejudiced by judgment entered on the issues in this case."[3]

The court cannot enter judgment against A. & P. and still maintain that it has in no way resolved the issue of A. & P.'s liability. By entering judgment against A. & P., the court was certainly resolving the parties' liability inter se. However, this was not the court's intention and it is clear from the above-quoted language that the court did not consider whether or not A. & P. was afforded coverage under the certificate of insurance referred to in the Settlement Agreement. The fact remains, however, that the court did direct that judgment be entered against A. & P. and it did so, by its own admission, without any interpretation of the agreement on which the settlement was based. If the court did not predicate A. & P.'s liability on the terms of the agreement, we are unable to discern *any reason* why judgment was entered as it was. Cf. P.L.E. Judgment §5. This be-

---

[3] This sentiment is reiterated in the opinion of the lower court: "Judgment was entered to protect the Camerons, *not* to impliedly resolve partially or in toto the respective liabilities between the defendants."

ing the case, the judgment entered was invalid on the face of the record.

Order vacated and record remanded for proceedings consistent with this opinion.