J-A10039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LAW OFFICES OF BRUCE J. CHASAN, LLC, AND BRUCE J. CHASAN, ESQ. | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : : | |
| v. | : : : | |
| | : | No. 1148 EDA 2024 |
| J. CONOR CORCORAN, ESQ., AND LAW OFFICE OF J. CONOR CORCORAN, P.C., AND HIDDEN CITY PHILADELPHIA | : : : : : | |

Appeal from the Judgment Entered April 17, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 220802425

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED OCTOBER 3, 2025**

Plaintiffs Bruce J. Chasan, Esquire, and the Law Offices of Bruce J. Chasan, LLC, (together "Appellants"), commenced this Dragonetti Act[1] and abuse of process action against defendants Hidden City Philadelphia ("HCP"),[2] as well as J. Conor Corcoran, Esquire, and the Law Office of J. Conor Corcoran, P.C., (together "Appellees"), in the Court of Common Pleas of Philadelphia County. Appellants challenge the trial court's order granting summary

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 42 Pa.C.S. §§ 8351-8355.

[2] HCP settled with the Appellants prior to Appellants filing this appeal and are not included among the appellees.

judgment in favor of Appellees.[3]  After careful review, we affirm and grant

Attorney Corcoran's application to withdraw his representation of the Law

Office of J. Conor Corcoran, P.C.[4]

This case arrives before this Court with a tortured procedural history

that we need not fully recount to reach our disposition.  Essentially, the claims

_____

[3] Appellants purport to appeal from the October 24, 2023 order granting summary judgment and the November 15, 2023 order denying reconsideration.  ***See*** Notice of Appeal, 4/30/25, at 1.  However, this appeal "properly lies from a judgment entered subsequent to the trial court's disposition of any summary judgment motions or post-trial motions." ***Thomas Rigging & Construction Company v. Contraves, Inc.***, 798 A.2d 753, 755 n.1 (Pa. Super. 2002); ***see also Bollard & Associates, Inc. v. H&R Industries, Inc.***, 161 A.3d 254, 256 (Pa. Super. 2017) ("An order denying reconsideration is unreviewable on appeal.") (citations omitted); ***Rohm and Haas Company v. Lin***, 992 A.2d 132, 149 (Pa. Super. 2010) ("Once an appeal is filed from a final order, all prior interlocutory orders become reviewable.") (citation omitted).  Accordingly, this appeal properly lies from the judgment entered April 17, 2024, as we discuss in greater detail in the body of this decision.  ***See Franciscus v. Sevdik***, 135 A.3d 1092, 1093 n.1 (Pa. Super. 2016) ("[The appellants] purport to appeal from the order granting summary judgment in favor of the [] defendant[ appellees].  This appeal properly lies from the final judgment disposing of all issues as to all parties[.]").

[4] Attorney Corcoran has filed in this Court an application to withdraw from representing the Law Office of J. Conor Corcoran, P.C., because his law license was suspended subsequent to filing documents in this Court, including Appellees' brief.  Attorney Corcoran wishes to continue to represent himself in this appeal, *pro se*, which he may do, and notes that the law firm wishes to rest on its brief, which we will permit, as Attorney Corcoran was licensed to practice law in this Commonwealth when he filed Appellees' brief.  However, given that we herein have granted Attorney Corcoran's request for withdrawal, we note that, for future filings made on behalf of the Law Office of J. Conor Corcoran, P.C., that entity must be represented by counsel.  ***See Walacavage v. Excell 2000. Inc.***, 480 A.2d 281, 285 (Pa. Super. 1984) (corporation may appear and be represented in Pennsylvania courts only by attorney duly admitted to practice law).

in Appellants' complaint are initially based upon a federal action for copyright infringement brought by Richard Liebowitz, Esquire, in November 2018 on behalf of his client Bill Cramer, a photographer, against HCP for its use of a photograph. On the defense side, Attorney Corcoran represented, among other parties, HCP. On the plaintiff side, Attorney Chasan agreed to serve as local co-counsel to, *inter alia*, file documents in the Eastern District of Pennsylvania, where Attorney Liebowitz was not admitted to practice law, but where the federal action was transferred. In his role in representing the federal copyright action plaintiffs, Attorney Chasan filed a response to Attorney Corcoran's motion for summary judgment and Rule 11[5] sanctions, substantively drafted by Attorney Liebowitz. The federal court ultimately granted Attorney Corcoran's motion for summary judgment, but not sanctions, and dismissed the case without prejudice because the plaintiffs had no standing as they were not the copyright holders.

Following the grant of summary judgment in the federal action, HCP, represented by Attorney Corcoran, commenced a Dragonetti action in Pennsylvania state court, representing, among others, Appellees and HCP, against, among others, Appellants ("Dragonetti Action I") by filing a writ of summons, and, thereafter, a complaint in August 2020. After several email exchanges where Attorney Chasan was unsuccessful in persuading Attorney Corcoran to remove him as a defendant in Dragonetti Action I, Appellants

_____

[5] ***See*** Fed.R.Civ.P. 11(c).

requested their insurance carrier to assign counsel to defend the action.[6] Thereafter, Appellants' counsel—appointed by the insurance carrier—informed Appellees via email of our Supreme Court's decision in **Raynor v. D'Annunzio**, 243 A.3d 41 (Pa. 2020), decided in December 2020. Appellees filed an amended complaint on February 8, 2021, that omitted Appellants as defendants in Dragonetti Action I, i.e. removing Appellants as defendants in that action. Although Appellees obtained an order from the trial court for alternative service due to the circumstances of the COVID-19 pandemic, Appellees **never served Appellants** with their Dragonetti Action I complaint (or any amended complaint). The parties eventually stipulated that Appellees' filing of the amended complaint omitting Appellants as defendants was not the result of a settlement.[7]

Thereafter, Appellants filed a new action—the instant action—against Appellees and HCP ("Dragonetti Action II"). On August 18, 2023, Appellees filed a motion for summary judgment, which the trial court granted on October 24, 2023, leaving only Appellants' claims against HCP remaining in the case. On March 11, 2024, the trial court filed a "Trial Work Sheet" in the docket,

---

[6] Appellants argue they were harmed insofar as this request for representation caused them to incur defense costs, a deductible, loss runs, and increased premiums, and they were adversely affected in their future legal malpractice insurability. **See** Appellants' Brief, at 21-22.

[7] Emails between the parties from around this time suggest the parties agreed the **Raynor** decision precluded the Dragonetti Action I claims against Appellants.

reflecting that Appellants settled their Dragonetti Action II claims against HCP. On April 17, 2024, Appellants and HCP jointly filed a praecipe to settle, discontinue, and end pursuant to Pennsylvania Rule of Civil Procedure 229 as to HCP only. On April 19, 2024, Appellants filed a notice of appeal. Appellants and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellants present the following claims for our review:

1. Did the trial court err as a matter of law in the Rule 1925(a) opinion in holding that the appeal is untimely because (1) a trial work sheet is not a final order, (2) a praecipe to settle, discontinue[,] and end pursuant to [Pennsylvania Rule of Civil Procedure] 229(a) is the exclusive method of voluntary termination of an action prior to trial, and [(3)] the court overlooked binding Supreme Court precedent, namely **_Cameron v. The Great Atlantic & Pacific Tea Co., Inc._**, 266 A.2d 715, 717-[]18 (Pa. 1970)?

2. Must the case be remanded because the trial court did not address all counts in the amended complaint and the issues raised in [Appellees]' summary judgment motion—especially Count II alleging abuse of process, but also whether there is sufficient evidence to support punitive damages, and whether the Dragonetti Act is allegedly unconstitutional as "regulating attorney conduct" insofar as it provides for punitive damages, when that is supposedly the exclusive Constitutional role of the Supreme Court—in the order granting summary judgment, or in the order denying reconsideration, or in the Rule 1925(a) opinion, because it is not the function of the Superior Court as an appellate court to be the first court to rule on the issues in the summary judgment motion that the trial court failed to address?

3. Did the trial court err as a matter of law in the summary judgment order in failing to address the issue of whether Attorney Corcoran filed the [Dragonetti Action I] complaint against [Appellants] for an improper purpose, and without probable cause, or otherwise proceeded in a grossly negligent

manner, in naming [Attorney] Chasan as a Dragonetti Act defendant?

4. Did the trial court err as a matter of law in not evaluating the evidence in the summary judgment record in the light most favorable to the non-moving parties, i.e., in favor of [Appellants]?

5. Did the trial court err as a matter of law in concluding *sub silentio* that the evidentiary circumstances as a whole did not support that there were triable issues of fact as to whether the action of Attorney Corcoran in [Dragonetti Action I] in filing an amended complaint that omitted [Attorney] Chasan as a defendant was an "unbidden abandonment" of the action against [Attorney] Chasan, within the meaning of **Bannar v. Miller**, 701 A.2d 242, 247 (Pa. Super. 1997), such that it amounted to a "favorable termination" for [Attorney] Chasan?

Appellants' Brief, at 6-7 (unnecessary capitalization omitted).

As properly identified by Appellants' first issue, we must initially discern whether Appellants timely filed their notice of appeal. **See Affordable Outdoor, LLC v. Tri-Outdoor, Inc.**, 210 A.3d 270, 274 (Pa. Super. 2019) ("timeliness is jurisdictional, as an untimely appeal divests this Court of jurisdiction to hear the merits of the case") (citation and quotation marks omitted). In its Rule 1925(a) opinion, the trial court opined that the present appeal is untimely because, in its view, the appeal should have been filed within 30 days from the March 11, 2024 entry on the docket reflecting that Appellants agreed to a settlement with HCP, but the appeal was filed April 19, 2024, beyond the 30-day deadline. **See** Pa.R.A.P. 902(b)(2); 903(a). Appellees filed in this Court an application to quash on that same basis, and, after we denied that application without prejudice to raise the claim again with this merits panel, Appellees renewed that claim of untimeliness within their

- 6 -

Appellees' brief filed in this Court. **See** Appellees' Brief, at 12-14. After our review, we specifically reject the trial court's analysis and find Appellants' notice of appeal is timely filed, as set forth below.

In **Cameron**, our Supreme Court faced a similar factual scenario. **See Cameron**, 266 A.2d at 717-18. In that case, it was alleged that the trial court's entry of a notation in the docket reflecting the existence of a settlement agreement between the parties divested the trial court of jurisdiction to enter judgment thereafter. **See id.** at 717. The Supreme Court of Pennsylvania rejected that argument and found that the docket entry was merely a ministerial act that did not terminate the litigation, especially where no party filed a praecipe to settle, discontinue, and end, where the court did not order such discontinuance, and where the settlement was contingent on conditions subsequent, i.e. payment. **See id.** at 717-18.

Here, the trial court filed a "Trial Work Sheet," which, among the available options, contained the checked box of "Settled prior to assignment for trial (Team Leaders, only)," but did not contain any other checked box, which options included "Discontinuance Ordered" and "Judgment Entered." Trial Work Sheet, 3/11/24. Further, neither Appellants nor Appellees filed a praecipe to settle, discontinue, and end as between each other in this case. **See** Pa.R.Civ.P. 229(a) ("A discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before commencement of the trial."). Where such a ministerial notation did not create a final order divesting the court of jurisdiction in **Cameron**, likewise,

here, entry of the Trial Work Sheet in the trial court docket did not terminate the claims as to HCP and thus could not start the 30-day appeal period. *See Cameron*, 266 A.2d at 717-18; Pa.R.Civ.P. 229(a); Pa.R.A.P. 341(a), (b)(1). Instantly, all claims between the parties were finally resolved at the time of filing the April 17, 2024 praecipe to settle, discontinue, and end as to HCP. *See* Pa.R.Civ.P. 229(a); *see also* Pa.R.A.P. 341(a), (b)(1). Thus, we conclude that Appellants' April 19, 2024 notice of appeal was timely filed, as it was filed within 30 days of that date upon which that final order was entered. *See* Pa.R.A.P. 903(a); *see also* Pa.R.A.P. 341(a), (b)(1). Accordingly, we may proceed to review the merits of this appeal.

In Appellants' second issue presented on appeal, Appellants claim that remand is required because the trial court never addressed Count II of their Dragonetti Action II complaint, alleging abuse of process. Appellants argue that, as it is generally not the function of the Superior Court, as an appellate court, to rule in the first instance on issues relating to summary judgment, remand is required for the trial court's preparation of a supplemental Rule 1925(a) opinion. *See* Appellant's Brief, at 42-44. We disagree.

Instantly, we reject Appellants' theory that remand is required, because, first, we observe that Appellants' claim stands in contradiction to our *de novo* standard of review and plenary scope of review for questions of law, such as this one, i.e. appellate review of the grant of summary judgment. *See Weber v. Lancaster Newspapers, Inc.*, 878 A.2d 63, 76 (Pa. Super. 2005) ("We need not remand for a trial court opinion, however, because the question is

one of law."). Indeed, our well-settled standard of review of the grant of summary judgment is set forth as follows:

> **Our scope of review is plenary, and our standard of review is the same as that applied by the trial court.** Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. **As our inquiry involves solely questions of law, our review is *de novo*.**
>
> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*) (citations and brackets omitted; emphases added); *see also* Pa.R.C.P. 1035.2(1). Further, "[o]nly when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment." *Sinoracki v. Children's Services Center of Wyoming Valley*, 304 A.3d 22, 28 (Pa. Super. 2023). Second, remand is not required because an appellate court may affirm the trial court's determination for any valid reason appearing of record. *See Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.*, 106 A.3d 27, 41 n.15 (Pa. 2014). Third, we reject Appellants' theory that remand is required because we observe that the basic

facts in this case that are necessary for our disposition are undisputed such that we need not remand for factual findings. *See, e.g.*, *Pappas v. Asbel*, 768 A.2d 1089, 1096 n.6 (Pa. 2001) (declining to remand for further factual findings where record undisputed and clear on basic facts and because appellate court may draw own inferences from basic facts and arrive at own conclusions when finding of fact is only deduction from other facts and ultimate fact is purely result of reasoning).   Therefore, we proceed to determine if Appellants established a cause of action for abuse of process to defeat summary judgment.

Important to this case, Pennsylvania courts have recognized a distinction between claims brought under the Dragonetti Act—or what was previously the common law tort of malicious use of process[8]—and the common law tort of abuse of process:

> The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it[.]  An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect[.]  On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated [] other than its proper effect and execution. Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued.  All the analogies of an action for a malicious arrest belong to an action for malicious use of civil process.

_____

[8] Malicious use of process is now referred to as wrongful use of civil proceedings.  *See Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 532 (Pa. Super. 2017).

***Ace v. Argonaut Insurance Company***, 452 A.2d 1384, 1385 (Pa. Super. 1982) (citations and quotation marks omitted). "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff[;] (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." ***Rosen v. American Bank***, 627 A.2d 190, 192 (Pa. Super. 1993). More specifically, the tort of abuse of process is intended to create liability for the "misuse" of process:

> The gravamen of the misconduct [of abuse of process] for which the liability stated in [Section 682 of the Restatement (Second) of Torts] is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent **misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed** under the rule stated in this Section.

***Id.*** (emphasis added). "The word process as used in the tort of abuse of process has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process." ***Id.*** (citation and quotation marks omitted) (noting abuse of process includes discovery proceedings, noticing depositions, and subpoena issuance).

> A cause of action for abuse of process requires some definite act or threat not authorized **by the process**, or aimed at an objective **not legitimate in the use of the process**; there is no liability

- 11 -

> where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

***Shaffer v. Stewart***, 473 A.2d 1017, 1019 (Pa. Super. 1984) (citations, quotation marks, brackets, and ellipsis omitted; emphases added).

Here, we conclude that, under the uncontroverted facts of this case, **Appellees did not use or misuse any process against Appellants**, as is required to establish a claim for abuse of process. ***See Rosen***, 627 A.2d at 192. Although defined broadly, we conclude that the tort of abuse of process cannot apply to Appellees' actions in Dragonetti Action I because **Appellees never obtained service of process on Appellants** for any Dragonetti Action I complaint or filing, **such that no process existed to misuse**. Accordingly, we are satisfied that no two reasonable minds could disagree that the trial court was required to enter summary judgment on Appellants' Count II claim for abuse of process in Appellees' favor, as no process was effectuated or obtained against Appellants. ***See Sinoracki***, 304 A.3d at 28; ***see also Rosen***, 627 A.2d at 192; ***see also Alderwoods***, 106 A.3d at 41 n.15.

Next, we address Appellants' third, fourth, and fifth claims on appeal together. We observe that the same standard of review applies, as above. ***See Reinoso***, 108 A.3d at 84; ***see also Sinoracki***, 304 A.3d at 28. As to these issues, Appellants argue that the trial court erred in granting summary judgment in favor of Appellees on Count I (wrongful use of civil proceedings) in their Dragonetti Action II complaint, because Appellants—contrary to the trial court's finding—allegedly satisfied the "favorable termination" prong of

the statute. Appellants base their claim on appeal on our decision in **Bannar**, 701 A.2d 242, wherein we found a voluntary dismissal could constitute a favorable termination to support Dragonetti claims. **See Bannar**, 701 A.2d at 249.

In **Bannar**, we determined that the equivalent of an unbidden abandonment occurred "on the eve of trial" and could support the favorable termination prong of the tort of wrongful use of civil proceedings. **Bannar**, 701 A.2d at 248; **see also Majorsky v. Douglas**, 58 A.3d 1250, 1269-70 (Pa. Super. 2012). The **Bannar** Court found that the factual circumstances of that case "tend[ed] to establish neither clients nor attorneys were attempting to properly adjudicate the claim. A last-second dismissal in the face of imminent defeat [wa]s not favorable to appellants[ as they] did not answer the bell in the fight they started, which is a victory for the other side." **Bannar**, 701 A.2d at 248. After review, we find Appellants are not entitled to relief.

This Court has explained the codification of the tort of wrongful use of civil proceedings within the Dragonetti Act as follows:

> "Wrongful use of civil proceedings is a tort which arises when a person institutes civil proceedings with a malicious motive and lacking probable cause." [**Rosen**, 627 A.2d] at 191. Pennsylvania codified the tort as follows:
>
> ### § 8351. Wrongful use of civil proceedings[.]
>
> **(a) Elements of action.--**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.[] § 8351(a)(1)-(2).  A successful cause of action for wrongful use of civil proceedings must prove three elements: 1) the underlying proceedings were terminated in their favor; 2) defendants caused those proceedings to be instituted against plaintiffs without probable cause; and 3) the proceedings were instituted primarily for an improper cause. [**Hart v. O'Malley**, 647 A.2d 542, 547 (Pa. Super. 1994)].

**Sabella v. Milides**, 992 A.2d 180, 188 (Pa. Super. 2010).  In contrast to the common law tort of abuse of process, "[m]alicious use of civil process has to do with the wrongful initiation of such process." **Id.**

Moreover, this Court has clarified that a Dragonetti claim must properly accrue to the would-be Dragonetti plaintiff as follows:

A plaintiff's Dragonetti cause of action does not accrue until such time as he successfully defeats the defendant in his attempts to have the plaintiff held legally liable.  **This does not occur until the lawsuit is resolved in the trial court** and is final, meaning that **said resolution has been upheld by the highest appellate court** having jurisdiction over the case or that the resolution has not been appealed.

**Clausi v. Stuck**, 74 A.3d 242, 247 (Pa. Super. 2013) (citations, quotation marks, and brackets omitted; emphases added).

Here, we do not reach the question of whether Appellants established a favorable termination because we observe that Appellees resolved their Dragonetti Action I claims against Appellants **without judicial intervention and outside the trial court**, which eliminates the possibility that Appellants

- 14 -

accrued a Dragonetti cause of action, as **there was no adjudication on the merits or any legal defeat in court**.[9]  **See Clausi**, 74 A.3d at 247 ("A plaintiff's Dragonetti cause of action does not accrue until such time as he successfully defeats the defendant in his attempts to have the plaintiff held legally liable.").  Indeed, as discussed above, Appellees removed Appellants from the Dragonetti Action I amended complaint thereby abandoning their claims against Appellants outside of the courts.[10]  **See Englert v. Fazio**

---

[9] Even if, we reached Appellants' arguments on the merits considering **Bannar** for the proposition that Appellees abandoned their claims in the face of "imminent defeat," thereby resulting in an unbidden abandonment establishing a favorable termination, we find **Bannar** inapposite because the abandonment in that case occurred at one of the latest possible stages in a litigation—the eve of trial—whereas, here, Appellees abandoned any purported claims in Dragonetti Action I at one of the earliest possible stages, i.e. prior to service of any complaint upon Appellants.

[10] In any event, our Supreme Court has noted the language of the Dragonetti Act precludes from its definition of "proceeding" the filing of complaints, as:

> a "proceeding" cannot include an "action," which is defined and commonly understood as any action in law or equity, or to put a finer point on it, any **cause of action**[.]  Thus, "civil proceedings" as referenced in the Act cannot include both the filing of motions within a case *and the filing of complaints to initiate a case* because those separate legal undertakings are independently defined under the Judicial Code to exclude one another.

**Raynor**, 243 A.3d at 55 (emphasis in bold in original; emphasis in italics added); **see also id.** at 57 (Wecht, J., concurring) ("Section 8351 of the Dragonetti Act expressly denotes such a claim as, itself, "an action."  But the definition of "proceeding" applicable to the entire Judicial Code makes clear that "the term does not include an action."  Consequently, one's wrongful use of the Dragonetti Act to harass another through the judicial system, although a "proceeding" in the colloquial sense, is really an "action" and not a "proceeding" as far as the Judicial Code is concerned.  Hmmm.  Perhaps these

*(Footnote Continued Next Page)*

*Mechanical Services*, 932 A.2d 122, 124 (Pa. Super. 2007) ("service of original process completes the progression of events by which an action is commenced"). Accordingly, we conclude that the trial court properly granted summary judgment in Appellees' favor on Count I of Appellants' complaint.[11] *See Reinoso*, 108 A.3d at 84; *see also Sinoracki*, 304 A.3d at 28. Thus, Appellants' claims fail.

Order affirmed. Application to withdraw granted. Judgment entered.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/3/2025

---

confounding incongruities are, like moles, unwhackable to the last. I join the Majority's resolution of these muddled terms, secure in the knowledge that the General Assembly is empowered to clarify their meanings by redrafting the relevant statutes.") (citations and emphasis omitted).

[11] An appellate court may affirm the trial court's determination for any valid reason appearing of record. *See Alderwoods*, 106 A.3d at 41 n.15.