2016 PA Super 134

| | |
|---|---|
| HARRY H. MILLER, EXECUTOR OF THE ESTATE OF REGINA C. MILLER, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ST. LUKE'S UNIVERSITY HEALTH NETWORK: ST. LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA D/B/A/ ST. LUKE'S HOSPITAL; ST. LUKE'S HOSPITAL & HEALTH NETWORK:  SUSAN SCHANTZ: RICHARD A. ANDERSON: BLANK ROME, LLP: DAVID M. LOBACH, II: SEYMOUR TRAUB AND ROBERT WAX, | |
| Appellees | |
| LESLIE A. HALL, EXECUTOR OF THE ESTATE OF MARYILYN J. HALL, DECEASED, | |
| Appellant | |
| v. | |
| ST. LUKE'S UNIVERSITY HEALTH NETWORK: ST. LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA D/B/A ST. LUKE'S HOSPITAL; ST. LUKE'S HOSPITAL & HEALTH NETWORK: SUSAN SCHANTZ: RICHARD A. ANDERSON: BLANK ROME, LLP: DAVID M. LOBACH, II: SEYMOUR TRAUB AND ROBERT WAX | No. 1193 EDA 2015 |

Appeal from the Order Dated March 27, 2015
In the Court of Common Pleas of Lehigh County

| | |
|---|---|
| Civil Division at No(s): 2013-C-993; 2013-C-994 | |
| ================================================= | |
| HARRY H. MILLER, EXECUTOR OF THE ESTATE OF REGINA C. MILLER, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ST. LUKE'S UNIVERSITY HEALTH NETWORK: ST LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA D/B/A/ ST. LUKE'S HOSPITAL; ST. LUKE'S HOSPITAL & HEALTH NETWORK: SUSAN SCHANTZ; RICHARD A. ANDERSON: BLANK ROME, LLP: DAVID M. LOBACH, II: SEYMOUR TRAUB AND ROBERT WAX, | |
| Appellees | |
| LESLIE A. HALL, EXECUTOR OF THE ESTATE OF MARILYN J. HALL, DECEASED, | |
| Appellant | |
| v. | |
| ST. LUKE'S UNIVERSITY HEALTH NETWORK: ST. LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA D/B/A ST. LUKE'S HOSPITAL; ST. LUKE'S HOSPITAL & HEALTH NETWORK: SUSAN SCHANTZ: RICHARD A. ANDERSON: BLANK ROME, LLP: DAVID M. LOBACH, II: SEYMOUR TRAUB AND ROBERT WAX, | No. 1312 EDA 2015 |
| APPEAL OF: ST. LUKE'S UNIVERSITY HEALTH NETWORK: ST. LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA D/B/A ST. LUKE'S HOSPITAL: ST. LUKE'S HOSPITAL & | |

HEALTH NETWORK: SUSAN SCHANTZ:
RICHARD A. ANDERSON: BLANK ROME,
LLP

Appeal from the Order Dated March 27, 2015
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2013-C-993 & 2013-C-994

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                          **FILED June 24, 2016**

These cases involve cross-appeals taken from the Order denying the parties' respective motions for post-trial relief after a jury determined Appellants/Cross-Appellees had proven the tortious conduct of Appellees/Cross-Appellants in this Dragonetti Act litigation but had failed to prove they suffered resultant damages.  Herein, Appellants contend that damages must be awarded where the jury found tortious conduct on the part of Appellees in the underlying proceedings, as the Dragonetti Act presumes damages flow from proof of wrongful use of civil proceedings.  In their cross-appeal, Appellees argue that damages are an element to the Dragonetti Act cause of action, such that Appellants' failure to prove damages to the satisfaction of the jury requires that judgment be entered in Appellees' favor.  We affirm.

---

* Former Justice specially assigned to the Superior Court.

The trial court provides an apt history of the case as follows:

These cases are part of the continuing legal sequelae of admitted serial-killer Charles Cullen's employment as a nurse in the Coronary Care Unit at Defendant St. Luke's Hospital from June 5, 2000, until June 5, 2002. Cullen resigned his employment with St. Luke's when told he was suspected by the hospital's front-line nursing staff of administering unauthorized medications to patients. Cullen was subsequently employed by the Somerset, New Jersey, Medical Center, which, in October 2003, fired him for suspicion of causing abnormal chemistries [in] its patients. In response to questioning by the New Jersey State Police, Cullen confessed in December 2003 to having killed patients in New Jersey and Pennsylvania, including five patients while he was employed at St. Luke's Hospital.

As testimony later revealed, before Cullen admitted to having killed the five patients at St. Luke's, front-line nurses at St. Luke's were frustrated by St. Luke's response to their concern that Cullen had been harming patients with diverted medications; one of the nurses brought her concern to the attention of the District Attorney of Lehigh County, whose investigation bore little fruit; and death certificates had been issued in each of those cases in which Cullen admitted to having killed patients that their cause of death was consistent with the progression of the respective diseases for which they had been receiving treatment at St. Luke's.

Cullen's confession caused concern among families of other patients who died during their hospitalization at St. Luke's and whose medical charts indicated Cullen treated them or may have had access to them while patients at St. Luke's. They questioned whether their family members had also been victims of Cullen's diabolical actions. Among them were the families of Regina Miller and Marilyn Hall. They retained counsel to obtain that information and proceeded to file suit against Cullen and St. Luke's, Harry H. Miller, Executor of the Estate of Regina c. Miller, Deceased v. St. Luke's Hospital and St. Luke's Hospital and Health Network and Charles Cullen, No. 2004-C-2048V, and Robert E. Hall, Jr., and Leslie A. Hall, Co-Executors of the Estate of Marilyn J. Hall, Deceased v. St. Luke's Hospital and St. Luke's

<u>Hospital and Health Network and Charles Cullen</u>, No. 2004-C-2052V, as did other families.

After extensive discovery, Messrs. Miller and Hall's cases, among other cases, were dismissed on July 1, 2009, when summary judgment was granted to St. Luke's for lack of expert testimony to establish a *prima facie* case of negligence. The Superior Court affirmed on June 30, 2010. Nos. 3463 EDA 2009 and 3467 EDA 2009. These wrongful death cases are referred to as "St. Luke's I."

Subsequent to the dismissal of the St. Luke's I cases, St. Luke's filed suit against Messrs. Miller and Hall, their attorneys and the doctor, John Shane, M.D., who authored a certificate of merit in each case to proceed with the actions against St. Luke's. St. Luke's claimed wrongful use of civil proceedings (Dragonetti Act, 42 Pa.C.S.A. § 8351 *et seq*.), abuse of process, fraudulent misrepresentation, civil conspiracy and RICO violations. [] These cases are referred to as "St. Luke's II." After depositions taken in 2013, in which Messrs. Miller and Hall asserted they relied on the advice of counsel in pursuing St. Luke's I, St. Luke's voluntarily discontinued their claims against them, but not against their attorneys or Dr. Shane []

Messrs. Miller and Hall (hereinafter referred to as the "Plaintiffs") then filed the within actions against St. Luke's and its attorneys, Blank Rome LLP, alleging abuse of process and wrongful use of civil proceedings in St. Luke's II claiming St. Luke's brought and prosecuted St. Luke's II to intimidate them, undermine their counsel's work in other cases pending against St. Luke's at the time the St. Luke's II cases were filed, chill the efforts of potential plaintiffs and their counsel in future medical malpractice actions against St. Luke's, and advance St. Luke's political agenda of advocating tort reform. These cases are referred to as "St. Luke's III."

These cases were tried together between June 16, and July 1, 2014, on the claim of wrongful use of civil proceedings as embodied by the Dragonetti Act.[fn] On July 1, 2014, the jury

---

[fn] By order of January 24, 2014, the court struck down Plaintiff's claim of abuse of process.

found St. Luke's did not have probable cause to continue St. Luke's II and, further, initiated or continued St. Luke's II for an improper purpose. It awarded no damages to the Plaintiffs and found the conduct of St. Luke's was not outrageous. As a result, the court entered an order and molded verdict that, in relevant part, reads the jury "found Defendants . . . to have acted without probable cause and for an improper purpose but also found that Plaintiffs suffered no damages as a result of said Defendant's conduct," and "we the jurors impaneled in the above-captioned cases, find in favor of Plaintiffs and against Defendants . . . in no amount."

St. Luke's and Plaintiffs filed post-trial motions. St. Luke's contend[ed] it was entitled to judgment because (a) there was no dispute of material fact that it commenced and pursued its underlying Dragonetti actions in St. Luke's II with probable cause and for a proper purpose, and (b) damages are an element of a Dragonetti claim, and the jury found Plaintiffs suffered no damages. Plaintiffs contend[ed] a violation of the Dragonetti Act presumes damages, and the court erred in not instructing the jury on presumed or nominal damages.[fn]

---

[fn] St. Luke's contends Plaintiffs failed to preserve any claim for post-trial review on the basis of an improper charge. It notes, notwithstanding Plaintiffs' assertions to the contrary, Plaintiffs neither filed with the court [n]or served upon St. Luke's any proposed jury instructions in contravention of the court's case management orders nor did they object pre-trial to St. Luke's request that Pa.SSJI (Civ) § 17.90B not be read to the jury. They did, however, preserve their objections at the charging conference on June 27, 2014, and again after the jury was charged by requesting the court read Pa.SSJI (Civ) § 1790 in its entirety. *See Harmen ex rel Harmen v. Borah*, 756 A.2d 1116, 1124 (Pa. 2000) ("It is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objection during trial and raise the issue in post-trial motions.") (*citing Takes v. Metropolitan Edison Co.*, 695 A.2d 397, 400 (Pa. 1997); *McMillen v. 84 Lumber, Inc.*, 649 A.2d 932, 934 (Pa. 1994); *Reilly v. Southeastern Pennsylvania Transp. Auth.*, 489 A.2d 1291, 1296 (Pa. 1985).

They also contend[ed] the award of no damages was inconsistent with the evidence presented as to the amount of

their loss.  They request[ed] a new trial limited to the amount of damages only.  [By its order and opinion of March 27, 2015, the trial court denied the parties' respective motions for post-trial relief.]

Trial Court Opinion, filed March 27, 2015, at 2-5.

Appellants filed a timely appeal and Appellees cross-appealed.

Appellant raises one issue for our review:

Did the trial court err as a matter of law when it refused to instruct the jury on the law of presumed damages as set forth in the Standard Civil Jury Instruction on Damages in an action for Wrongful Use of Civil Proceedings arising under the Dragonetti Act, 42 Pa.C.S. § 8351, et seq.; or, in simpler terms, is the law of damages in an action for wrongful use of civil proceedings accurately described in Standard Civil Jury Instruction 17.90B?

Appellant's brief at 4.

Though it is Appellant who contests the exclusion of Pennsylvania

Standard Civil Jury Instruction 17.90B ("Pa.SSJI (Civ) 17.90B")[1] from jury

_____

[1] Standard Civil Jury Instruction 17.90B provides:

You may presume that the plaintiff suffered both injury to his reputation and the emotional distress, mental anguish, and humiliation that would normally result from conduct such as the defendant's.  This means you need not have proof that the plaintiff suffered any particular injury to his reputation or that he plaintiff in fact suffered emotional distress, mental anguish, and humiliation in order to award him damages for such harm.

In determining the amount of an award upon such presumed injury to the plaintiff's reputation and the plaintiff's suffering of emotional distress, mental anguish, and humiliation, you may consider the character of the plaintiff and his general standing and reputation in the community.  You may also consider the publicity that attended the defendant's act.  [If the defendant

*(Footnote Continued Next Page)*

instructions given at trial, only Appellees included Pa.SSJI (Civ) 17.90B among the proposed jury instructions filed with the court. Appellants did, however, join Appellees' request for the instruction during the charging conference, but the trial court responded to the joint request with concern that Pa.SSJI (Civ) 17.90B's presumption of damages failed to comport with the requirement in Section 8354 that a plaintiff bears the burden of proving eligible damages set forth in Section 8353.

Nevertheless, after lengthy debate between counsel for Appellant and the court, the court offered to give the Pa.SSJI (Civ) 17.90B instruction if both parties requested it. Appellees, however, decided to withdraw their

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> made a public retraction of this [charge] [claim] or apology to those who learned of his [charge] [claim], such fact, together with the timeliness and adequacy of the retraction or apology, is important in determining the probable harm to the plaintiff's reputation.] [You may also take into account the defendant's unsuccessful assertion of probable cause as a matter likely to affect the plaintiff's reputation.] [You may also consider what probable effect the defendant's conduct had on the plaintiff's trade, business, or profession and the harm the plaintiff sustained as a result of that conduct.]
>
> The motive and purpose of the defendant, his belief or knowledge of the falsity of the publication, and the conduct of the plaintiff are not to be considered by you in determining the amount of damages to which the plaintiff is entitled. Such factors are only important in deciding whether you will award punitive damages against the defendant and, if you decide to make such an award, the amount of damages.

Pennsylvania Suggested Standard Civil Jury Instruction 17.90B (4th Edition), Pa.SSJI (Civ), § 17.90B.

support for the instruction in favor of the charge authored by the court. Accordingly, the court instructed the jury with its self-authored charge on Wrongful Use of Civil Proceedings.  **See** *infra.*

The question before us, therefore, is whether the trial court properly declined to instruct the jury that Dragonetti Act damages are presumed to flow from a defendant's wrongful use of civil proceedings in favor of instructing, instead, that a plaintiff who proves wrongful use still carries the burden of proving resultant damages.   Our review of challenges to jury instructions is well-settled.

> Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case.  It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial.
>
> Further, a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law.

**Philips v. Lock**, 86 A.3d 906, 916–17 (Pa.Super. 2014).

In the instant case, the trial court gave the following instruction relating to damages in a Wrongful Use of Civil Proceedings claim:

> Under the law, the Plaintiff in each of [the] two cases [before you] has the burden of proving his claim. . . .  In a civil case, the Plaintiff must prove his claims by a legal standard called a preponderance of the evidence.   The preponderance of the evidence means that a fact is more likely true than not.

- 9 -

***

The Plaintiffs, Mr. Hall and Mr. Miller, have the burden of proving that each of the following is more likely true than not[:] [o]ne, the Defendants did not have probable cause to initiate or continue the lawsuit which we have called St. Luke's II, against the Plaintiff; two, the Defendants initiated, or continued that lawsuit for an improper purpose; and three, the Plaintiff suffered harm as a result of the Defendants' conduct.

***

The fact that I am instructing you about damages does not imply any opinion on my part as to whether damages should be awarded. Each Plaintiff, Mr. Hall and Mr. Miller, is entitled to be fairly and adequately compensated for all harm he suffered as the result of the Defendant's conduct.

The injuries for which you may compensate the Plaintiff by an award of damages against the Defendants include[:] one, the harm to the Plaintiff's reputation, that you find resulted from the Defendant's conduct; and two, the emotional stress, mental anguish, and humiliation that you find the Plaintiff suffered as the result of the Defendant's conduct, as well as the bodily harm[,] if any, to the Plaintiff, that you find was caused by such suffering.

The motive and purpose of the Defendant are not to be considered by you in determining the amount of damages to which Plaintiff is entitled. Any damages you deem appropriate to award[] are solely to compensate the Plaintiff[] and not to punish the Defendants.

N.T., 6/30/2014 at 121-22, 134.

Appellants contend the court's charge contravenes language in the Dragonetti Act entitling a plaintiff to recover enumerated damages once he or she has proven the two essential elements of the action—neither of which are damages—defined in Section 8351, *infra*. Nor does the policy of deterrence underlining the Act's purpose support the court's instruction, Appellants argue, as requiring plaintiffs to demonstrate specific examples of

- 10 -

reputational harm and emotional distress before damages may be awarded leaves open the "absurd" consequence of a mere "paper judgment, a veritable slap on the wrist" befalling a defendant shown to have engaged in wrongful use of proceedings.

Both the trial court and Appellees deny that the Dragonetti Act presumes damages upon proof a defendant wrongfully used civil proceedings as defined in Section 8351, *infra*. They maintain the court properly instructed the jury in accordance with the Act as a whole when it advised that a plaintiff who proves a defendant's wrongful conduct is entitled to compensation upon proof he or she suffered one or more of the enumerated damages prescribed under the statute. With specific reference to the statute itself, the trial court construes the Dragonetti Act as clear and free from all ambiguity on the issue of damages where it provides "the plaintiff has the burden of proving . . . [t]he plaintiff has suffered damages as set forth in Section 8353 (relating to damages)." 42 Pa.C.S.A. § 8354, *infra.* We agree.

Because the question of whether the court's instruction comports with the Dragonetti Act turns on a construction of the Act, itself, the issue before us concerns a matter of law. Thus, our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Spence****,* 91 A.3d 44, 46 (Pa. 2014) (citation omitted).

> When construing a [statutory provision] utilized by the General
> Assembly in a statute, our primary goal is "to ascertain and
> effectuate the intention of the General Assembly." 1 Pa.C.S. §
> 1921(a). "Every statute shall be construed, if possible, to give

effect to all its provisions." *Id.* However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. *Id.* § 1921(b). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." *Id.* § 1903(a). In other words, if a term is clear and unambiguous, we are prohibited from assigning a meaning to that term that differs from its common everyday usage for the purpose of effectuating the legislature's intent.

*Commonwealth v. Cahill*, 95 A.3d 298, 301 (Pa.Super. 2014). *Accord Strausser Enters., Inc. v. Segal & Morel, Inc.,* 89 A.3d 292, 297 (Pa.Super. 2014) (citation omitted) ("Under the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit."). Moreover, while titles or headings are not controlling in statutory construction, they may be used as an aid in ascertaining intent. 1 Pa.C.S. § 1924; *Gerland v. Gerland*, 703 A.2d 70, 73 (Pa.Super. 1997); *Commonwealth v. Williams*, 624 A.2d 171, 173 (Pa.Super. 1993).

Pennsylvania's Dragonetti Act defines a complaint for wrongful use of civil proceedings under the Act as follows:

**§ 8351. Wrongful use of civil proceedings**

**(a) Elements of action.**—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings: (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of

parties or adjudication of the claim in which the proceedings are based; and (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351. The scheme clarifies the term "probable cause" as used herein.

### § 8352. Existence of probable cause

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law; (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S.A. § 8352. The statute also enumerates eligible damages under such an action:

### § 8353. Damages

When the essential elements of an action brought pursuant to this subchapter have been established as provided in section 8351 (relating to wrongful use of civil proceedings), the plaintiff is entitled to recover for the following:

(1) The harm normally resulting from any arrest or imprisonment, or any dispossession or interference with the advantageous use of his land, chattels or other things, suffered by him during the course of the proceedings.

(2) The harm to his reputation by any defamatory matter alleged as the basis of the proceedings.

(3) The expense, including any reasonable attorney fees that he has reasonably incurred in defending himself against the proceedings.

(4) Any specific pecuniary loss that has resulted from the proceedings.

(5) Any emotional distress that is caused by the proceedings.

(6) Punitive damages according to law in appropriate cases.

42 Pa.C.S.A. § 8353.  Importantly, the statute makes clear:

### § 8354. Burden of proof

In an action brought pursuant to this subchapter the plaintiff has the burden of proving, when the issue is properly raised, that:

(1) The defendant has procured, initiated or continued the civil proceedings against him.

(2) The proceedings were terminated in his favor.

(3) The defendant did not have probable cause for his action.

(4) The primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.

(5) The plaintiff has suffered damages as set forth in section 8353 (relating to damages).

42 Pa.C.S.A. § 8354.

As noted, Appellants center their position upon language within Section 8353 providing that a plaintiff who has proven a defendant's wrongful use of civil proceedings under Section 8351 is "entitled to recover for" certain damages enumerated in Section 8353.  If Section 8353 represented the entirety of the statute's discussion of damages in a

Dragonetti Act claim, one could reasonably conclude the General Assembly intended the presumption of such damages on nothing more than a plaintiff's proof of Section 8351 elements essential to the cause of action.

The statutory scheme, however, modifies Section 8353 with ensuing Section 8354, which requires a plaintiff to bear the burden of proving, *inter alia*, that he or she has suffered damages as set forth in Section 8353, when the issue is properly raised. When read *in pari materia*, which, we find from the plain language of the scheme, was clearly the General Assembly's intent, Sections 8353 and 8354 entitle a plaintiff who has established a defendant's wrongful use of civil proceedings to recover any of the prescribed statutory damages he or she places in issue and demonstrates by a preponderance of the evidence.

Construing the Act, instead, simply to presume damages from proof of defendant's wrongful conduct under Section 8351 would render the Section 8354 component part of the damages-related statutory scheme superfluous, a nullity serving no purpose. Our rules of statutory construction, however, do not permit us to invalidate a clearly expressed requirement in this manner, nor may we disregard Section 8354's directive that a plaintiff must prove Section 8353 damages by a preponderance of the evidence where such directive may be read in harmony with the "entitled to recover" damages language of Section 8353. ***See***, ***e.g.***, ***Commonwealth v. Office of Open Records***, 103 A.3d 1276, 1287-88 (Pa. 2014) (declining to

construe one provision to nullify immediately preceding provision when rules of statutory construction require reading provisions in harmony where both can be made to stand together).

Accordingly, we discern no intent from the plain wording of the statutory framework of the Dragonetti Act to presume damages upon proof of a defendant's wrongful conduct as defined in Section 8351. Had the General Assembly intended presumed damages, it would not have fashioned Section 8354 to place the onus upon a plaintiff to put in issue any damages delineated under Section 8353 and to prove such damages by a preponderance of the evidence. Read together, therefore, Sections 8353 and 8354 entitle a plaintiff, who prevails in his or her Section 8351 phase of the action, to those statutorily prescribed damages which are properly placed in issue and proven by a preponderance of the evidence.

In leaving it to the jury to decide whether Appellants proved by a preponderance of the evidence that Appellant's wrongful use of civil procedure in St. Luke's II caused harm to Appellees compensable under the statute, the trial court properly conformed its instruction on damages to the requirements of the Dragonetti Act. We, therefore, dismiss Appellant's challenge to the jury charge as meritless.[2]

_____

[2] Because we deem the trial court's instruction a fair and accurate reflection of the law, we affirm on this basis and need not engage in an analysis of Standard Civil Jury Instruction SCJI 17.90B. To the extent the trial court
*(Footnote Continued Next Page)*

In Appellees' cross-appeal, they raise the following pertinent issues:[3]

2. Whether the Trial Court's denial of Defendant-Appellees' [] motion for post-trial relief should be reversed where Defendants are entitled to the entry of judgment in their favor because the jury found in its July 1, 2014 verdicts that Plaintiffs [Appellants] had failed to prove a requisite element of their claims—the existence of damages?

3. Whether the Trial Court's denial of [Appellees'] motion for post-trial relief should be reversed where [Appellees] are entitled to the entry of judgment in their favor because [Appellants] failed to advance evidence on summary judgment and at trial sufficient to warrant submission of their Dragonetti claims to the jury?

Appellees' brief at 3.

Appellees first claim they were entitled to entry of judgment in their favor when the jury returned a verdict awarding Appellants no damages. According to Appellees, the requisite elements to an action under the Dragonetti Act are set forth in Section 8354, *supra*, which lists five burdens of proof assumed by a plaintiff. Because Appellants failed to carry the fifth and final one, placing a burden upon a plaintiff to prove he or she suffered damages enumerated in Section 8353, they failed to establish all requisite

_____
(Footnote Continued)

analyzed the standard instruction in its March 27, 2015 Opinion, we agree with its observation that standard instructions promulgated by the Civil Instructions Subcommittee of the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions are not submitted to the High Court for approval and are, therefore, are only suggested.
[3] Our resolution of Appellant's appeal obviates the need to address Appellees' first and fourth issues, which pertain to Appellants' claim for damages.

elements to the wrongful use of civil proceedings action, Appellees maintain. We disagree.

The heading to Section 8351(a), "elements of action," unambiguously provides that an action for wrongful use of civil proceedings comprises the following elements: 1) the underlying proceedings were terminated in their favor; 2) defendants caused those proceedings to be instituted against plaintiffs without probable cause; and 3) the proceedings were instituted primarily for an improper cause. *See*, *e.g.*, *Sabella v. Estate of Milides*, 992 A.2d 180, 188 (Pa.Super. 2010) (quoting *Hart v. O'Malley*, 647 A.2d 542, 547 (Pa.Super. 1994)). *See also Kit v. Mitchell*, 771 A.2d 814 (Pa. Super. 2001) ("Wrongful use of civil proceedings is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause." . . . The elements of the tort are set forth at 42 Pa.C.S.A. § 8351.") (internal quotation marks and citations omitted).

At the same time, however, this Court has recognized the delineation of an additional factor described elsewhere in the statute—Section 8354— that a plaintiff must show in order to recover in the action, namely, that the plaintiff has suffered damages. *Id.* (referring to Section 8354) (citing *Mi-Lor, Inc. v. DiPentino*, 439 Pa.Super. 636, 654 A.2d 1156, 1158 (1995). A bifurcated, two-phase action, therefore, appears to be contemplated in the Dragonetti Act, wherein the plaintiff must, first, prove the elements of the underlying tort, expressed in Section 8351, upon which application of the

remainder of the statutory scheme hinges and then, second, prove he or she actually suffered one or more of the damages for which the statutory scheme entitles recovery. Without making both demonstrations, a plaintiff cannot recover compensation on the cause of action. Relatedly, the Pennsylvania Supreme Court has stated:

> This concern for dilatory, vexatious, or otherwise abusive litigation conduct is reflected elsewhere in Pennsylvania law. Specifically, our "Dragonetti Act," 42 Pa.C.S. §§ 8351-55, provides a statutory basis for relief for wrongful use of civil proceedings.[] Under the Act, "[w]rongful use of civil proceedings is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause." *Ludmer v. Nernberg*, 433 Pa.Super. 316, 640 A.2d 939, 942 (1994), *appeal denied*, 541 Pa. 652, 664 A.2d 542 (1995), *cert. denied sub nom Nernberg v. Ludmer,* 517 U.S. 1220, 116 S.Ct. 1849, 134 L.Ed.2d 950 (1996) (internal quotation marks omitted). "[T]he gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa.Super. 2002). *In establishing entitlement to relief, a plaintiff under the Dragonetti Act bears the burden of proving:*
>
>> (1)The defendant has procured, initiated or continued the civil proceedings against him.
>> (2) The proceedings were terminated in his favor.
>> (3) The defendant did not have probable cause for his action.
>> (4) The primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.
>> (5) The plaintiff has suffered damages....
>
> 42 Pa.C.S. § 8354 . . . . Thus, whether civil proceedings have been tortiously used hinges on an aggrieved party's ability to

- 19 -

demonstrate that the suitor instituted proceedings without probable cause to do so. 42 Pa.C.S. 8354.

*McNeil v. Jordan*, 894 A.2d 1260, 1274-1275 (2006) (emphasis added).

In light of the foregoing, we discern no error with the entry of judgment in favor of Appellants on their wrongful use of civil proceedings cause of action, as defined in Section 8351, for the jury returned a verdict finding Appellants had satisfied all essential elements to the action with evidence that Appellees tortuously used civil proceedings in instituting and advancing its underlying St. Luke's II action. It was, nevertheless, the jury's prerogative to find Appellants failed to prove they suffered damages—as is required under a separate part of the Act—as a result of Appellees' tortious conduct.

In Appellees' remaining issue, they ask this Court to reverse the trial court's denial of their motion for post-trial relief asking for entry of judgment notwithstanding the verdict for want of sufficient evidence to support judgment in Appellants' favor.

> Our standard of review of an order denying judgment n.o.v. is whether, reading the record in the light most favorable to the verdict winner and granting the benefit of every favorable inference, there is sufficient competent evidence to support the verdict. *Wenrick v. Schloemann-Siemag Aktiengesellschaft, et al.,* 523 Pa. 1, 564 A.2d 1244 (1989). Any conflict in the evidence must be resolved in the verdict winners' favor. *Jones v. Constantino*, 429 Pa.Super. 73, 631 A.2d 1289 (1993), *alloc. denied*, 538 Pa. 671, 649 A.2d 673 (1994). Judgment n.o.v. may be granted only in clear cases where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v. Penske*

> *Olds-Cadillac-GMC, Inc.*, 413 Pa.Super. 308, 605 A.2d 373 (1992).

*Bannar v. Miller*, 701 A.2d 242, 246 (Pa.Super. 1997).

In the first part to its claim, Appellees contend a Dragonetti claim requires expert testimony as a matter of law to assist the finder of fact in its assessment of whether defendants instituted and pursued the underlying action in accordance with an appropriate standard of professional care. *See* Appellees'/Cross-Appellants' brief at 31. In this regard, Appellees analogize the necessity of an expert in this context to the general requirement of expert testimony in legal malpractice cases under Pennsylvania law. Appellees'/Cross-Appellants' brief at 32.

To support their contention, Appellees cite to *Schmidt v. Currie*, 470 F.Supp. 2d 477, 483 (E.D.Pa. 2005), in which the federal district court observed "the Pennsylvania Superior Court has . . . recently reiterated that expert testimony to establish the standard of care in a [Dragonetti] action is required unless the 'issue is simple and the lack of skill obvious.'" *Id.* at 482 (citing *Bannar v. Miller*, 701 A.2d 242 (Pa. Super. 1997)). Only where the lack of skill is so obvious as to be within the ordinary experience and comprehension of a non-professional jury is an expert not required, *Schmidt* observed. *Id.* at 483.

In *Bannar*, this Court rejected the argument that an expert was required as a matter of law in the Dragonetti action before it where the

Appellant failed to establish that the issues were too complex or beyond the knowledge of the jury:

> Our Supreme Court has established that in actions for legal malpractice expert testimony is not required where the issues are not "beyond the knowledge of the average person." **Rizzo v. Haines**, 520 Pa. 484, 501-02, 555 A.2d 58, 66 (1989). Appellants make no contention the issues were complex or beyond the knowledge of the average person. "Where the issue is simple, and the lack of skill obvious, the ordinary experience and comprehension of lay persons can establish the standard of care." **Id.** at 501, 555 A.2d at 66. Therefore, there was no need for expert testimony on the issue of professional negligence in this particular case.

**Bannar** at 249 (Pa. Super. 1997).

Here, Appellees baldly assert the underlying matters did not involve simple matters of credibility, but rather required the jury "to navigate the contours of professional legal judgment and determine whether to initiate or continue a civil action against the [P]laintiff[s]…." **Banner**, however, did not limit the scope of matters resting within the jury's comprehension to those involving issues of credibility, and Appellant fails to explain why the jury's experience and comprehensions in the present case would not have enabled it to understand the evidence offered and establish the standard of care therefrom. Moreover, to the degree Appellant attempts to infer the necessity of an expert in a Dragonetti action from the requirement of submitting a certificate of merit in a legal malpractice claim, we reject the comparison, as we have held a claim of wrongful use of civil proceedings

does not set forth a claim for legal malpractice, thus obviating the need for a certificate of merit. **Sabella**, 992 A.2d at 189.

Appellees also seek judgment on the claim Appellants offered insufficient evidence either directly establishing or allowing for the inference that Appellees pursued their Dragonetti action in St. Luke's II without probable cause and for improper purpose. We reject this claim.

The touchstone of Appellees' probable cause position focuses on the 2007 depositions of Appellants-as-plaintiffs in their wrongful death action (St. Luke's I), in which Appellants testified they had relied on counsel's advice in commencing their litigation. Appellees acknowledge a plaintiff's good faith reliance on the advice of counsel establishes the "probable cause" defense to a Dragonetti Action, **see** Section 8352(2), *supra*, but they deny the mere assertion of such reliance establishes the defense when a plaintiff otherwise invokes attorney/client privilege that precludes further inquiry into such advice. Without access to details underlying counsels' advice to Appellants in St. Luke's I, Appellees argue, they could not possibly evaluate whether Appellants actually sought and relied upon counsels' advice in good faith, as required under Section 8352(2).

Instead, it was not until they pursued their Dragonetti Action against Appellants in St. Luke's II and secured Appellants' waiver of attorney/client privilege during depositions that the role counsels' advice had on Appellants' decision to pursue the wrongful death action in St. Luke's I became clear,

Appellees maintain. Having only then ascertained Appellants' sincere reliance on counsels' advice, Appellees posit, they discontinued their suit against Appellants. Therefore, Appellees conclude, because Appellants failed to establish their own probable cause to pursue the wrongful death action in St. Luke's I until supplying full disclosure during depositions in the St. Luke's II Dragonetti action pursued by Appellees, Appellees had probable cause to institute and pursue their St. Luke's II action up until the point Appellants established their good faith reliance on counsels' advice.

"An action for wrongful use of civil proceedings will be upheld if the trier of fact could reasonably conclude that the defendant initiated the underlying lawsuit without probable cause." **Broadwater v. Sentner**, 725 A.2d 779, 784 (Pa.Super. 1999) (quoting **Gentzler v. Atlee**, 660 A.2d 1378, 1384 n. 9 (1995)). In the case *sub judice*, Appellants sought to prove Appellees' absence of probable cause to initiate the St. Luke's II action[4] with evidence that Appellants had instituted their respective St. Luke's I wrongful death actions: (1) with the support of a medical expert's certificate of merit; (2) amid substantiated reports that the hospital had neglected to heed nursing staff members' serious concerns about Nurse Cullen, who had treated Appellants' respective decedents; and (3) on the advice of counsel,

---

[4] **See Cosmas v. Bloomingdales Bros., Inc.,** 660 A.2d 83, 86 (Pa.Super. 1995) (holding Dragonetti Act plaintiff has burden of proving absence of probable cause).

according to their respective testimonies offered during depositions taken in their wrongful death actions. Evidence of Appellees' press release announcing they had commenced a wrongful use of civil proceedings action against Appellants, Appellants' lawyers, and the physician who supplied the certificate of merit in St. Luke's I for, *inter alia*, for conspiratorial conduct consistent violative under the RICO statutes was further admitted as evidence of Appellees' state of mind in initiating the St. Luke's II suit. Given the totality of such evidence, with particular consideration devoted to Appellees' failure to point to anything in the record that would have cast doubt upon the sincerity of Appellants' respective claims they, as laypersons, relied in good faith on their counsels' advice, we discern no reason to disturb the jury's determination that Appellees acted without probable cause in pursuing its claim of wrongful use of civil proceedings.

The same body of evidence militates in favor of upholding the sufficiency of evidence of an improper purpose to the St. Luke's II action against Appellants Hall and Miller. Pennsylvania law allows a finder of fact to infer improper purpose from want of probable cause to maintain or continue the proceedings. **Buchleitner v. Perer**, 794 A.2d 366, 377 (Pa.Super. 2002) (citations omitted). Here, it was within the province of the jury to infer from the evidence a primary purpose to the St. Luke's II action of specifically retaliating against Appellants Miller and Hall as well as generally

deterring or intimidating the public at-large with respect to filing a negligence-based claim based on the Nurse Cullen controversy.[5]

For the foregoing reasons, we affirm the Order upholding the judgment entered below.

Order AFFIRMED.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2016

_____

[5] Because it was, likewise, within the province of the jury to disbelieve the testimony of Appellees' attorneys as to their primary purpose for instituting and pursuing the St. Luke's II action against Appellants Miller and Hall, we deem Appellees' Section 8352(3) argument relating to their attorneys' probable cause defense unavailing, as well.