J. A30035/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| OVERSEERS, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WALTER ADKINS, III, | : | |
| | : | |
| Appellant | : | |
| | : | |
| ---------------------------------------- | : | |
| | : | |
| WALTER ADKINS, III, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 654 WDA 2017 |
| OVERSEERS, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY | : | |

Appeal from the Judgment Entered April 17, 2017,
in the Court of Common Pleas of Allegheny County
Civil Division at No. GD-15-018939

BEFORE:  BOWES, J., STABILE, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 24, 2018**

Appellant, Walter Adkins, III, appeals from the judgment entered April 17, 2017 by the Court of Common Pleas of Allegheny County.  Judgment was entered on two separate cases involving these parties that were consolidated on March 1, 2016.  After careful review, we affirm.

The trial court provided the following recitation of the facts and procedural history of this case:

On or about March 21, 2013, [appellant's] property located at 476 1st Street in Heidelberg, Pennsylvania was severely damaged by fire. [Appellant] maintained property insurance with State Farm and Casualty Company (hereinafter "State Farm") with the face amount of said policy as $300,000. Based on State Farm's recommendation, [appellant] originally engaged Disaster Restoration Services ("DRS") to rebuild the structure. Fairly early, during salvage and demolition on the restoration project, [appellant] discharged DRS (on or about May of 2013). DRS received $60,000, mostly for demolition work, leaving $240,000 for completion of the project out of the remaining insurance money.[Footnote 1]

> [Footnote 1] Additional monies were later made available to [appellant] by way of a rider attached to the State Farm insurance policy.

Based on the recommendation of Jason Adkins, the son of [appellant], Joseph Lilley was contacted and eventually retained by [appellant]. At said time, Joseph Lilley was operating and doing business as Overseers, LLC [("appellee")]. [Appellant] and [appellee] contracted to rebuild the structure for a price of $369,542.50.

Other than an initial payment of $71,289.96, which was paid prior to commencement of work by [appellee], the contract was silent as to a payment schedule as to the remaining installments. Over the course of construction, the scope of the project grew but was not reflected by way of additional contracts or change orders. The parties' additional agreements were never memorialized. At the completion of the project, [appellee] claimed a payment deficiency of $102,610, while [appellant] complained that he had overpaid and was still being billed, paying 'at least $343,418.96.' [Appellant] asserts that [appellee] was paid the $240,000, the original balance from the State Farm policy and an extra $77,000 from State Farm, in addition to $26,000 paid 'out of pocket' by [appellant].

It is [appellee's] contention that [appellant] requested and authorized extra work and materials in the amount of $58,510. [Appellee] further contends that the total contract price, with extras, amounts to $428,052.

[Appellee] filed a Mechanics Lien Claim at GD 14-012420, to recover any and all deficiencies between amounts collected and charged as they related to 476 1st Street. [Appellant] filed a Complaint in Civil action asserting violations of the Home Improvement Consumer Protection Act and Unfair Trade Practices and Consumer Protection [Act], as well as one count of Breach of Contract at the above referenced general docket number.

. . . .

This matter was initiated by a claim filed by [appellee] on July 18, 2014. A mechanics lien complaint was later filed by [appellee] on November 19, 2014. [Appellant] filed Preliminary Objections (hereinafter "POs") to the mechanics lien complaint on December 19, 2014. The Honorable Michael McCarthy sustained [appellant's] POs, ordering [appellee] to 'amend its claim as to labor and materials.' An Amended Mechanics Lien Claim was filed on February 2, 2015.

A Complaint in Civil Action was filed by [appellant] on October 27, 2015, alleging that [appellee] violated the Home Improvement Consumer Protection Act and Unfair Trade Practices and Consumer Protection Act (Count I), as well as one count of Breach of Contract (Count II). By Order dated March 1, 2016, the above[-]referenced general docket number (GD: 15-018939) was consolidated pursuant to Pa.R.C.P. 213(a) with GD 14-10240 as GD 15-018939.

[Appellee] filed an answer, new matter and counterclaim on March 3, 2016. [Appellee] assert[s] that the subject property, which is deemed

"commercial", would not be subject to either the Home Improvement Consumer Protection Act (hereinafter ["]HICPA") or the Unfair Trade Practices and Consumer Protection Act (hereinafter "UTPCPL").

[Appellee] further den[ies] the Acts' protections and application due to the nature of the contract, finding it something other than a "home improvement contract."

[Appellee] raise[s] counterclaims, at Count I, Breach of Contract, and at Count II, Unjust Enrichment-**Quantum Meruit**. [Appellee] now seek[s] a deficiency of $102,610.00 in labor and materials alleged to have been provided to [appellant] without fair compensation.

[Appellee] further assert[s] that the parties' original contract included a compulsory arbitration clause and that this matter should be removed from the Court of Common Pleas and reinstated on the Arbitration Docket.

Following some pretrial discovery motions, Judge Folino signed orders dated August 15, 2016, in which the Court placed this matter on [the] January Trial List, noting that there would be no further continuances. Additionally, Judge Folino filed an order granting [appellant's] Motion for Leave to Praecipe for a jury trial. [Appellant] filed a demand for [a] jury trial on August 19, 2016.

The parties met for a pre-trial conference in January of 2017. When the parties were unable to resolve this dispute through settlement, this case was assigned to [the Honorable Michael A. Della Vecchia] for trial. The parties elected to forego a jury, choosing rather to proceed with a non-jury trial.

On January 11, [2017,] the parties, joined by [Judge Della Vecchia] "viewed" the property before commencing with testimony of five (5) witnesses over the next several days. [Judge Della Vecchia] heard and evaluated the live testimony of Joseph Lilley, the

owner and operator of [appellee]; [appellant], the owner of the subject property; Robert Gelman, a certified real estate appraiser; Jason Adkins, the son of the property owner; and John Stivala, a contractor and co-owner of JS Construction before rendering [his] decisions.

After evaluating the testimony and evidence and giving this matter serious consideration, on January 24, 2017, a non-jury verdict was entered at GD: 15-018939, in favor of [appellee] and against [appellant]. On that same date, a non-jury verdict was entered in favor of [appellee] and against [appellant] per the verdict entered at GD 14-01240.

On February 3, 2017, [appellant] filed a Motion for Post-Trial Relief [for judgment notwithstanding the verdict ("JNOV")]. Upon receipt of said motion, [Judge Della Vecchia] authored an Order of Court directing the parties to appear for argument as to same on April 20, 2017, with briefs due one[]week prior. The argument was later rescheduled to April 19, 2017, by Order dated April 3, 2017.

Following a thorough review of the parties' briefs in addition to argument held as to post-trial arguments, [Judge Della Vecchia] issued an Order on April 21, 2017, deny[ing] [appellant's] Motion for Post-Trial Relief. Judgment on the Verdict was entered in favor of [appellee] and against [appellant] in the amount of $71,771.29. (Order, 2/2/17).

On May 4, 2017, [appellant] filed a Notice of Appeal. In response thereto, [Judge Della Vecchia] issued an Order dated[] May 16, 2017, directing [appellant], through counsel, to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). Said statement was timely filed on June 2, 2017, placing this matter properly before the Superior Court of Pennsylvania.

Trial court opinion, 7/26/17 at 1-5. The trial court filed an opinion pursuant to Pa.R.A.P. 1925 (a) on July 25, 2017.

Appellant raises the following issues for our review:

I. Is [a]ppellant entitled to judgment as a matter of law (["JNOV"]) based upon the operation of Pennsylvania's Home Improvement Consumer Protection Act, 73 P.S. § 517.1 **et seq.**, when the proposed contract for home improvement work did not comply with multiple provisions of 517.7(a) and when change orders were not reduced to writing or executed by either party?

II. Is [a]ppellant entitled to [JNOV] when, even if **quantum meruit** was applied to this case, [a]ppellant paid to [appellee] one hundred thousand dollars in excess of the value of the benefit conferred upon [a]ppellant, and when [a]ppellant directed [appellee] to stop work starting in August of 2013 when [a]ppellant had all but run out of State Farm insurance proceeds?

III. Is [a]ppellant entitled to a new trial when, prior to the commencement of trial, the trial court determined that neither the Home Improvement Consumer Protection Act nor the Unfair Trade Practices and Consumer Protection Law applied to the instant matter, when the subject property has served as [appellant's] personal residence and dwelling since 1987?

IV. Is [a]ppellant entitled to a new trial when the trial court permitted opposing counsel two cross-examinations of [a]ppellant, but limited [a]ppellant's counsel to "two minutes" on re-direct examination.

V. Is [a]ppellant entitled to [JNOV] when, assuming **arguendo** there existed a valid and enforceable contract, [appellee was] the first part[y] to commit a material breach, and when any claim for costs associated with change orders was occasioned by [appellee's] breach of contract, thereby justifying a suspension of performance on [a]ppellant's part?

Appellant's brief at 4-5.

**I.**

In his first issue, appellant contends that the trial court erred when it denied his motion for JNOV and determined that the contract at issue is not governed by the HICPA and the UTPCPL. The trial court determined that the property at 476 First Street, Heidelberg, Allegheny County, Pennsylvania ("the property"), "was constructed and used as something other than a single-family unit and something other than purely residential." (Trial court opinion, 7/26/17 at 11-12.)

The standard governing JNOV is as follows:

> Our standard of review when considering motions for a directed verdict and [JNOV] are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> > There are two bases upon which a [JNOV] can be entered[:] one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse[ly] to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that

> a verdict for the movant was beyond peradventure.
>
> ***Janis v. AMP, Inc.,*** 856 A.2d 140, 143-44 (Pa.Super. 2004) (internal quotation marks and citations omitted).

***Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.***, 40 A.3d 1261, 1267 (Pa.Super. 2012).

In order to determine the applicability of the HICPA, we must look to the plain language of the statute. Specifically, our inquiry must focus on the definitions of words and phrases contained within the HICPA. The HICPA states that "no home improvement contract shall be valid or enforceable against an owner unless it . . ." includes the 13 elements enumerated by the HICPA. 73 P.S. § 517.7(a). The statute defines "home improvement" as work, "done in connection with land or a portion of the land adjacent to a **private residence** or a building or a portion of the building which is used or designed to be used as a private residence for which the total cash price of all work agreed upon between the contractor and owner is more than $500[.]" 73 P.S. § 517.2 ("Home Improvement") (emphasis added). "Private residence" is defined as either "a single family dwelling; a multifamily dwelling consisting of not more than two units; [or] a single unit located within any multifamily dwelling, including condominiums and cooperative units." 73 P.S. § 517.2("Private Residence").

At the beginning of the trial, the trial court conducted a view of the property in question. Based, in part, on the view, the trial court noted the following observations:

> What [the trial court] could not fail to notice was the existence of four (4) electric meters, three (3) water heaters, two (2) air conditioning units, both an apartment and a loft area created out of the first floor, in addition to an operating workshop with numerous organ pipes. It was obvious and apparent [to the trial court] that this property was constructed and used as something other than a single-family unit and something other than purely residential.
>
> [The trial court] found significant the facts that both the building and occupancy permits were issued for a commercial/residential property. [The trial court] was further persuaded that [appellant] was not using the property strictly as a residential, single family dwelling by correspondence [appellant] wrote to the building manager of Heidelberg requesting additional property addresses to accommodate his business, as well as his apartment and newly constructed rental unit.

Trial court opinion, 7/26/17 at 11-12.

As noted by the trial court, appellant testified that he wrote a letter to the Heidelberg borough manager, in which he requested two additional addresses for the property for two apartments, while maintaining his business address at the property. (Notes of testimony, 1/13/17 at 284.) The trial court also noted that the property had four electric meters.

The HICPA does not provide a definition of what constitutes a "unit." When a word is undefined by statute, we may determine the "common and approved meaning of a word" by way of an "examination of its dictionary

- 9 -

definition." ***Chamberlain v. Unemployment Compensation Bd. Of Review***, 114 A.3d 385, 394 (Pa. 2015), citing ***Commonwealth v. Hart***, 28 A.3d 989, 909 (Pa. 2011). Random House defines "unit" as "one of a number of things, organizations, etc., identical or equivalent in function or form." "unit". Dictionary.com Unabridged. Random House, Inc. 2 Feb. 2018. <Dictionary.com http://www.dictionary.com/browse/unit>. Based on this definition and the trial court's factual determinations derived from its view of the property, we find that the property contained three units—appellant's business and two apartments.

Accordingly, in conjunction with HICPA's definitions of "home improvement" and "private residence," we therefore find that the trial court did not abuse its discretion when it determined that the HICPA does not control in the instant case.

## II.

Appellant next avers that he paid appellee "a sum of money in excess of the value of the benefit conferred upon [appellant]," and as a result, appellee cannot recover on the grounds of ***quantum meruit***. (Appellant's brief at 36.) Appellee contends that appellant failed to include any argument pertaining to ***quantum meruit*** in his motion for post-trial relief, thus waiving the issue. (Appellee's brief at 28.)

"Pa.R.C.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial

motion, it is waived for appeal purposes." ***Crespo v. Hughes***, 167 A.3d 168, 181 (Pa.Super 2017), quoting ***L.B. Foster Co. v. Lane Enterprises***, 710 A.2d 55 (Pa. 1998) (citations omitted).

In the instant appeal, appellant filed post-trial motions on February 3, 2017. Therein, he raised several issues; however, appellant failed to raise any issues pertaining to ***quantum meruit*** or unjust enrichment. Accordingly, we find that appellant's second issue is waived for the purposes of appeal.

## III.

In his third issue on appeal, appellant contends that the trial court abused its discretion when it determined that the UTPCPL, 73 P.S. § 201-1, ***et seq.***, did not apply because the trial court determined that the property was a combination of residential, investment, and commercial. Appellee argues that the trial court did not abuse its discretion because the UTPCPL does not apply to investment properties.

We find that the trial court did not abuse its discretion, and that the facts of record support the trial court's determination that the property was a combination of residential, investment, and commercial. The UTPCPL specifically "provides for the right of individuals to bring a private action when a "person . . . purchases or leases goods or services **primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal** . . ." 73 P.S. § 201-9.2(a),

quoted by ***Lal v. Ameriquest Mortg. Co.***, 858 A.2d 119, 125 (Pa.Super. 2004) (emphasis in original case law).

Here, the trial court specifically noted the existence of four electric meters, three water heaters, and two air conditioning units on the property. Additionally, the trial court noted that appellant requested that the Borough of Heidelberg grant him new addresses for the property for use by his business and an apartment unit. We therefore find that the trial court did not abuse its discretion when it determined that the UTPCPL does not apply to the property, as the property was not being used primarily for personal, family, or household purposes.

**IV.**

Appellant next argues that the trial court abused its discretion when it limited appellant's counsel's re-direct examination of appellant to "two minutes," following appellant's testimony when called as if on cross during appellee's case-in-chief. (Appellant's brief at 49-50.) Appellee contends that this issue is waived because appellant's counsel failed to place an objection of record to the trial court's directive that re-direct examination be limited to two minutes. (Appellee's brief at 35-36.)

Our cases, citing Pennsylvania Supreme Court precedent, have repeatedly stated that "[i]t is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objection[s] during trial and raise the issue in post-trial motions." ***Miller v. St. Luke's Univ. Health***

*Network*, 142 A.3d 884, 889 (Pa.Super. 2016), *appeal denied*, 164 A.3d 479 (Pa. 2016), quoting *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1124 (Pa. 2000), citing *Takes v. Metro. Edison Co.*, 695 A.2d 397, 400 (Pa. 1997); *McMillen v. 84 Lumber, Inc.*, 649 A.2d 932, 934 (Pa. 1994); *Reilly v. Southeastern Pennsylvania Transp. Auth.*, 489 A.2d 1291, 1296 (Pa. 1985).

Here, appellant's counsel failed to raise the objection during trial, and accordingly waives the issue on appeal.

**V.**

In his fifth and final issue on appeal, appellant avers that because appellee was the first party to materially breach the contract with appellant, appellant should be relieved of his obligation to pay the balance awarded to appellee by the trial court. (Appellant's brief at 51.) Specifically, appellant contends that appellee was "obligated to attach to the contract (or otherwise provide) drawings, specifications, Labor and Industry approved drawings, notes detailing project cost breakdown and agreed upon assumptions for the work to be performed by [appellee]." (*Id.* at 52.) Appellant further argues that appellee only provided Disaster Restoration Services drawings and specifications at trial, "which fail to reflect the job [appellee] set out to perform or the job they actually performed, and which were rejected by the parties at the outset[.]" (*Id.*)

When considering an allegation of a material breach of contract, we are governed by the following standard:

> Pennsylvania courts have long recognized the general principle of contract law providing that a material breach of a contract, which is vital to the existence of a contract, relieves the non-breaching party from any *continuing duty of performance* under the contract. **LJL Transp., Inc. v. Pilot Air Freight Corp.**, 962 A.2d 639, 648 (Pa. 2009) (citing **Berkowitz v. Mayflower Securities**, 317 A.2d 584, 586 (Pa. 1974) (citing 6 Williston, *A Treatise on The Law of Contracts,* § 8[64] (3d. ed. 1962))).
>
> In **LJL Transp., Inc.**, our Supreme Court found that Pilot was justified in terminating its contract with a franchisee who improperly diverted business to a direct competitor of Pilot that the franchisee owned. Even though the franchise agreement expressly gave the franchisee a right to cure a breach of the agreement, the Supreme Court found the franchisee's self-dealing and disloyalty was an incurable breach that frustrated the general purpose of the franchise agreement. Accordingly, the Supreme Court emphasized that Pilot should not be expected to continue to perform under the agreement where the parties' basic trust had been violated:
>
>> When there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary.
>>
>> Such a breach is so fundamentally destructive, it understandably and inevitably causes the trust which is the bedrock foundation and veritable lifeblood of the parties' contractual relationship to essentially evaporate. We find our law

- 14 -

> does not require a non-breaching party to prolong a contractual relationship under such circumstances.
>
> ***LJL Transp., Inc.***, 962 A.2d at 562 (citation omitted).

***Umbelina v. Adams***, 34 A.3d 151, 159-160 (Pa.Super. 2011), ***appeal denied***, 47 A.3d 848 (Pa. 2012).

Here, appellant failed to establish that any material breach of contract took place. As noted above, appellant avers that appellee failed to provide specifications for the work to be performed at the property. This contention is belied by the record. The trial court specifically stated that it "accepted that prior to any construction, the parties . . . entered into a contract for $369,542.50 for restoration commensurate with the plans drafted by Disaster Restoration Services [] and signed by the parties on May 24, 2[01]3. (Trial court opinion, 7/26/217 at 28, citing notes of testimony, 1/13/17 at 206.)

Upon our review of the record, we find that appellee's Exhibit 1, which appellant acknowledged being the contract that he signed with appellee, contains numerous drawings, specifications, and project cost breakdowns. Accordingly, we find that the trial court's findings are supported by the record and that it did not abuse its discretion. Appellant's fifth issue is without merit.

Judgment affirmed.

J. A30035/17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/24/2018